NEW YORK COUNTY—HON. CHARLES P. DALY, ACTING SURROGATE[*]—
August, 1862.

# LYNES v. COLEY.

*In the Matter of the Estate of* SANDFORD COLEY, *deceased.*

It is a general rule, that a beneficiary who seeks the payment of a legacy
must resort to the jurisdiction of the State or country where the testator
was domiciled at the time of his death, where letters testamentary were
originally granted ; and that payment of it will not be decreed by a for-
eign tribunal, out of assets situate within its jurisdiction which are un-
der administration ancillary.

But, *it seems,* that where it is shown that no injury can arise to creditors or
legatees, from decreeing the payment of a legacy, the surrogate may re-
quire its payment out of assets situate within the jurisdiction where the
legatee resides.

The testator, at the time of his death, was domiciled in Connecticut, in which
State his will was admitted to probate. The executor afterwards ob-
tained letters ancillary here, to reach effects in this State.

   *Held,* that the executor could be called upon to account here only for
such assets as the testator left in this State, and which were here at the
time the letters ancillary were granted.

The accounting of the executor here, is to be carried no further than may be
necessary to enable our own citizens to secure their claims out of assets
situate within our own jurisdiction ; after which, and the payment of
expenses, the further administration of the assets is to be left to the ju-
risdiction where the estate is to be finally closed.

ALEX. W. BRADFORD, *for Executor.*

JOHN J. TOWNSEND, *for Legatee.*

THE SURROGATE.—The testator, at the time of his death,
was domiciled in Connecticut, and his will admitted to pro-
bate in that State, in August, 1857. Afterwards, in Novem-
ber, 1858, his executors obtained letters ancillary in this
court, to reach effects in this State. He has been called to

---

[*] Surrogate WEST having died during his term of office, Judge DALY, F. J.,
New York Common Pleas, discharged the duties of surrogate from July 8 to
December 1, 1862.

account by a legatee resident here; and, the executor, having filed his account, the legatee insists that there are railroad bonds, stocks in various corporations, and State bonds, other than those of the State of Connecticut, not included in the inventory filed here, in respect to which he claims the right to examine the executor, with the view of ascertaining whether any of them, or the proceeds of any of them, have been brought within this jurisdiction since letters were granted here; to which the executor objects, upon the ground that he can be called to account here, only for such assets as the testator left in this State, and which were here at the time when the letters ancillary were granted; and that with respect to all other assets, he is to account in the jurisdiction where they are situate, or in the State of Connecticut, where the testator was domiciled at the time of his death, where the will was originally admitted to probate, and where the estate is now in the course of administration.

I think the objection is well taken. Our statute provides that in all cases where persons, not inhabitants of this State, shall die, leaving assets in the State, and letters testamentary have been granted by competent authority in any other State of the Union, the person so appointed, on producing such letters, shall be entitled to letters of administration in preference to all other persons. (3 *Rev. Stat.*, 159, § 31, 5 ed.)

The design of this provision was to enable an executor, who had obtained letters in another State, to possess himself lawfully of the assets which the testator had left in this State; and for those assets he must account here. If, however, he has, before letters ancillary were granted to him, collected debts in this State, or otherwise previously possessed himself of property which the testator left here, he is not to account here for such assets; but to the jurisdiction where the will was originally admitted to probate, and where the estate is to be generally administered. (*Parson* v. *Lyman*, 20 *N. Y.*, 103; 28 *Barb.*, 564; 4 *Bradf.*, 268.)

The object of the legatee in the present case, by the exam-

ination which he wishes to institute, is to ascertain, not merely what assets were left by the testator in this State, but whether the executor has not, since letters ancillary were granted to him, brought here assets belonging to the estate,— with the view of requiring him, if such should be the fact, to account for them here; and this, in my judgment, the legatee cannot do. If they were not collected or realized in this State, by the executor, after he took out letters here, he is to account for them in the jurisdiction in which they were situate at the time of the testator's death; or in Connecticut, where the testator's estate is in the course of general administration.

As the term " ancillary" denotes, the administration here is, in a certain sense, subordinate to the more general administration in Connecticut.

The assets of foreigners, says Story, are collected under what is called an ancillary administration, because it is subordinate to the original administration, taken out in the country where the assets are locally situate. (*Story's Eq. Jur.*, § 583; *Story's Confl. of L.*, 512–519, ch. 13); and this term was employed by Chancellor WALWORTH, in *Vroom v. Van Horne* (10 *Paige*, 556), as descriptive of the kind of administration for which provision had been made by our statute.

By a principle universally recognized, the interpretation of the testator's will, and the distribution of his estate, are regulated by the *lex domicilii*, and the accounting of the executor here is to be carried no further than may be necessary to enable our own citizens to secure their claims out of assets situate within our own jurisdiction; after which, and the payment of expenses, the further administration of such assets, it is generally conceded, is to be left to the jurisdiction where the estate is to be finally closed.

If the person calling the executor to account was a resident creditor here, I should feel disposed to go very far in assisting him to ascertain, by a proceeding like this, what portion of the testator's estate was situate here, irrespective of the circumstances under which it came within our jurisdiction;

that he might have whatever remedy, for the payment of his debt, our tribunals could afford him. But a legatee who is a partaker of the testator's bounty, may very well be remitted to the jurisdiction where the estate is to be generally administered.

It has in several cases been held that the beneficiary who seeks the payment of a legacy, must resort to the jurisdiction of the State or country where the testator was domiciled at the time of his death, where letters testamentary were originally granted; and that the payment of it will not be decreed by a foreign tribunal, out of assets situate within its jurisdiction, which are under administration ancillary. (*The Selectmen of Boston* v. *Boylston*, 2 *Mass.*, 384; 9 *Id.*, 337; *Fay* v. *Haven*, 3 *Metc.*, 109–114; *Jennison* v. *Hapgood*, 10 *Pick.*, 77.) This is a general rule;—a correct one, to prevent all possibility of conflict of jurisdiction to secure the creditors, wherever situate, against losing any part of their claim through a payment to legatees; and generally to prevent the doing of any act, on the part of independent jurisdictions, which might cause a different result in the disposition of his estate from what the testator intended. As a general rule of comity, it recommends itself by its eminent justice and propriety; but still, like every other rule, it has its exceptions. If the bulk of the testator's estate is within the jurisdiction where administration ancillary has been granted, if there is nothing in the will to indicate the possibility of any question arising under it, and debts have been paid, or the amount of them has been fully ascertained by the ordinary course of procedure in both jurisdictions, and it is apparent to the court that no injury could possibly arise to creditors or legatees by decreeing the payment of a legacy, then there is no reason why the payment of it should not be decreed out of assets situate within the jurisdiction where the legatee resides.

No rule of comity demands that the legatee, in such a case, should be turned over to the tribunals of the State or country where the testator was domiciled at the time of his

death. Nothing has been laid before me to show that the application of the legatee, in the present case, presents such an exceptional instance, and I shall therefore hold that the executor is not required to account generally here for assets which have been returned by him, and included in the inventory which he has filed in Connecticut; but that he is to account for such assets only as may have been collected or realized by him in this State, since the letters ancillary were granted to him.